**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION**

UNITED STATES OF AMERICA,

        *Plaintiff*,

*v.*

RANDY J. CHAFFEE,
STATE OF MICHIGAN, OTSEGO
COUNTY,

        *Defendants*.

_____/

CASE NO. 18-11559

DISTRICT JUDGE THOMAS L. LUDINGTON
MAGISTRATE JUDGE PATRICIA T. MORRIS

**REPORT AND RECOMMENDATION ON PLAINTIFF'S MOTION
FOR PARTIAL SUMMARY JUDGMENT AND DEFENDANT
CHAFFEE'S MOTION TO DISMISS**
(ECF Nos. 24, 26)

## I.  Recommendation

The United States brings this action to obtain judgment on Defendant Randy Chaffee's unpaid taxes and unpaid tax penalties for frivolous filings. (ECF No. 1.) It also seeks to enforce tax liens on Chaffee's property. (*Id.*) They have filed a motion for partial summary judgment, and Defendant Chaffee has responded with a motion to dismiss. (ECF Nos. 24, 26). For the reasons that follow, I recommend that the Court **DENY** Defendant Chaffee's motion (ECF No. 26) and **GRANT Plaintiff's motion**, with the judgment for tax penalties equal to Plaintiff's alternative request for 19 penalties, (ECF No. 24).

## II.   <u>Report</u>

### A.   **Background**

The relevant facts regarding Defendant Chaffee's (Defendant)[1] taxes center around two topics. First, Plaintiff alleges that from 2003 until 2008 Defendant either failed to file tax returns or filed false ones claiming no tax liability. (ECF No. 1, PageID.3.) Second, Plaintiff claims that Defendant submitted frivolous tax filings in 1998 and from 2000 through 2008, resulting in penalty charges under 26 U.S.C. § 6702. (ECF No. 1, PageID.5.) Plaintiff brought this action to reduce the outstanding tax assessments and penalties to a judgment and for permission to enforce its tax lien on Defendants property at 1794 MacGregor Rd., in Vanderbilt, Michigan (the Property).[2] (ECF No. 1, PageID.3-8.) I will address the evidence regarding each topic in turn.

### 1.   **Unpaid Taxes**

The assessments of unpaid taxes begin in 2003. (ECF No. 24, PageID.160.) In that year, according to a certified Social Security earnings statement, Defendant's income was $20,232. (ECF No. 24, PageID.236.) He did not file a tax return for that year, however,

---

[1] Although other defendants are in the case, the action revolves around Chaffee and Plaintiff's present motion seeks judgment only as to him. Therefore, I will refer to Chaffee as "Defendant."

[2] Defendant and his wife received the property as husband and wife by quitclaim in 2002. (ECF No. 1, PageID.2; ECF No. 24, PageID.298.) Thirteen years later his wife quitclaimed her interest in the property to him. (ECF No. 1, PageID.2; ECF No. 24, PageID.299.). His court filings have listed that address, (ECF No. 15, PageID.79; ECF No. 26, PageID.316, 320; ECF No. 30, PageID.338; ECF No. 33, PageID.368, 377), and so did his tax filings (although they sometimes were from "1792" MacGregor Rd.) and other documents, *see, e.g.*, (ECF No. 24, PageID.238, 241, 243, 244, 247, 249, 250, 252, 253, 255, 256, 258, 259, 261, 262, 264, 266, 268, 269-272, 274, 276, 278, 280, 282, 284, 286, 288-290, 292, 297). While he offers some sovereign-citizen style flimflam—arguing there is no evidence of his United States citizenship or that Vanderbilt is in the United States, and also that he has opted against recognizing national or state law in lands outside the United States—he has not raised any credible issue regarding his ownership of the Property.

until April 2009. (ECF No. 24, PageID.160, 250.) The return listed zeros for all income categories except unemployment compensation, which he claimed amounted to $6353. (ECF No. 24, PageID.250.) That figure represented his adjusted gross income. (*Id.*) He also asserted that $1547 had been withheld and he was owed that much as a refund. (ECF No. 24, PageID.251.)

The IRS was not buying it. On a Form 4340 Certificate of Assessments and Payments, the government assessed an additional $2466 in taxes, along with interest charges and various late fees. (ECF No. 24, PageID.160-161.) As of May 30, 2019, Defendant's 2003 tax bill had climbed to $7884.21. (ECF No. 24, PageID.192.)

The story is much the same for the years 2004 through 2008. In 2004, his earning were $18,174, (ECF No. 24, PageID.236), but he reported just $5482 in his late-filed tax return and claimed a refund of $1389, (ECF No. 24, PageID.253-254). The IRS assessed additional taxes and fees, which reached $6091.45 as of May 30, 2019. (ECF No. 24, PageID.165-166, 191.)

His earnings in 2005 were $inter16,848, (ECF No. 24, PageID.236), a figure that fails to match his self-reported income on either of the two tardy tax returns he filed. (ECF No. 24, PageID.256-257, 259-260.) One return recorded total income of $5042, from unemployment compensation, and withholdings of $52,832, which he requested as a refund. (ECF No. 24, PageID.259-260.) On the other return, he reported $26,131 income, all of which came from an "original issue discount" (OID). (ECF No. 24, PageID.256, 258.) The OID is the difference between a debt instrument's (*e.g.*, a bond's) face value (the amount it can be redeemed for at maturity) and what it sells for. *See* Craig Nemiroff, Note,

*Original Issue Discount and the "LTV Risk" Reconsidered*, 105 Yale L.J. 2209, 2211-2212 (1996). In other words, "the discount represents the additional interest that accumulates over the life of the bond in excess of the interest paid out as coupon payments." *Id.*; *see* 26 U.S.C. § 1273(a)(1); *see also United States v. Miller*, 2009 WL 4060274, at *2 (M.D. Tenn. Nov. 23, 2009) ("OID income is a reportable form of taxable interest based upon the difference between the maturity and issuance price of a debt instrument. OID is generally included in a taxpayer's income as it accrues over the term of the debt instrument, whether or not the taxpayer actually receives payments from the issuer of the debt instrument. OID is treated like a payment of interest . . . .").

Here, Defendant claimed that the entire OID amount had been withheld and he requested it as a refund. (ECF No. 24, PageID.257.) The IRS, however, assessed a tax, coupled with fees, amounting to $4284 as of May 30, 2019. (ECF No. 24, PageID.171-173, 191.)

In 2006, he earned $19,428, which is the same amount he reported on one of the three tax returns he filed. (ECF No. 24, PageID.237, 262.) He claimed that the income had been withheld and he wanted a refund in that amount. (ECF No. 24, PageID.262-263.) His other tax returns reported income (which he said was fully withheld and he requested as refunds) of $456.96 and $726. (ECF No. 24, PageID.264-267.) The IRS assessed taxes and fees, which on May 30, 2019, equaled $2299.39. (ECF No. 24, PageID.175-178, 191.)

Earnings in 2007 were $19,116. (ECF No. 24, PageID.237.) He filed eight tax returns that year, reporting incomes (and requested refunds due to withholding) of $4628.66; $2006.52; $6777.22; $19,116; $1397.10; $3749.02; $3794.06; and $649.10.

(ECF No. 24, PageID.272-287.) The IRS assessed taxes that, as of May 30, 2019, equaled $1574. (ECF No. 24, PageID.181-185, 191.)

Finally, in 2008 Defendant earned $15,949. (ECF No. 24, PageID.237.) No tax return has been provided for that year. The Form 4340 mentions a September 2010 "substitute for return" that Defendant apparently filed but that does not appear in the record. (ECF No. 24, PageID.187.) He was nonetheless assessed taxes that, on May 30, 2019, amounted to $3573.88. (ECF No. 24, PageID.1187-190, 191.)

In sum, Plaintiff calculates that, by May 30, 3019, Defendant owed $25,707.15. (ECF No. 24, PageID.191.)

## 2.    Tax Penalties

Under 26 U.S.C. § 6702—discussed below—a $5000 penalty must be imposed for filing a frivolous tax return. Here, Plaintiff identifies numerous frivolous returns in 1998 and from 2000 to 2007. (ECF No. 24, PageID.133-140.)

For 1998, Plaintiff imposed a single penalty for Plaintiff's tax return and his Form 4852, which is a substitute for a W-2 or 1099-R form when the employer does not provide those forms. (ECF No. 24, PageID.194-196, 238-240.) The tax return (not submitted until 2009) denied that Defendant received any income except for $3627 in unemployment compensation and requested a refund of $1838, the amount he claimed had been "withheld from Forms W-2 and 1099." (ECF No. 24, PageID.239.) In the Form 4852, he broke down the federal withholdings into specific categories, such as Social Security tax withheld, and added state withholdings; the total withholdings he claimed on the Form 4852 were $2,230.77. (ECF No. 24, PageID.240.) He also listed his employer as "Chaffee

Excavating," located in Vanderbilt, Michigan. (*Id.*) His earnings for 1998, as evidenced by the certified Social Security record, were $16,664. (ECF No. 24, PageID.236.)

Two penalties were assessed for 2000. (ECF No. 24, PageID.198-200.) Once again, Plaintiff's tax return (filed in 2009) reported no income aside from unemployment compensation, which was $3332. (ECF No. 24, PageID.241-242.) He again sought a refund equal to his claimed withholdings, $1499, and he again filed a Form 4852 itemizing the withholdings and listing the same employer. (ECF No. 24, PageID.242-243.) The earnings reported in the Social Security statement were $22,890.75. (ECF No. 24, PageID.236.)

Plaintiff assessed two penalties in 2001. (ECF No. 24, PageID.202-203.) That year, in addition to $3887 of unemployment compensation, Defendant also claimed $321 of state or local tax refunds or credits. (ECF No. 24, PageID.244.) He denied all other income and sought a refund of $1750, representing alleged withholdings that he specified in another Form 4852. (ECF No. 24, PageID.244-246.) The Social Security report listed his earnings as $17,882.50. (ECF No. 24, PageID.236.)

For 2002, Plaintiff imposed two penalties on Defendant. (ECF No. 24, PageID.206-208.) As in the prior tax returns, Plaintiff again denied all income except for unemployment compensation, amounting to $5232, and again sought a refund for the $1367 he claimed had been withheld, as broken down in the accompanying Form 4852. (ECF No. 24, PageID.247-249.)

I have already discussed above Plaintiff's earnings and his tax returns for 2003 through 2007. Plaintiff presently seeks a single penalty for each of 2003, 2004; "at least

two" penalties for 2005; "at least three" penalties for 2006[3]; and "at least eight" penalties for 2007.[4] (ECF No. 24, PageID.148-153.) Defendant filed other tax documents during this period that were not discussed above but are relevant to the penalties.

Defendant's Form 4852 for both 2003 and 2004 specified the withholdings from his tax returns those years. (ECF No. 24, PageID.251-252, 254-255.) Recall that Plaintiff's 2005 returns asked for a $26,131 refund (due to OID) and a $52,832 refund. (ECF No. 24, PageID.257, 260.) He also filed a Form 1099-OID to explain his OID income. (ECF No. 24, PageID.258.) The form noted that Defendant was the payer and Independent Bank was the recipient; the discount income for 2005 was $26,131.29, all of which was withheld. (*Id.*) In his Form 4852 for 2005, Plaintiff noted withholdings only for Social Security and Medicare taxes in the sum of $1288; he denied income from Chaffee Excavating. (ECF No. 24, PageID.261.)

As noted above, Defendant submitted multiple tax returns in 2006. (ECF No. 24, PageID.263-267.) In addition, he filed what purports to be a corrected W-2, indicating that he worked for Chaffee Excavating and had previously reported $19,428 in compensation, whereas the correct amount was $0. (ECF No. 24, PageID.268.) Also included in the 2006 filings were two documents purporting to be money orders. (ECF No. 24, PageID.269-

---

[3] The Form 4340 listed $20,000 in penalties, which would indicate that four $5000 penalties had been assessed. (ECF No. 24, PageID.222-224.) Plaintiff's brief lists the $20,000 sought, but argues in the alternative that "at least three $5,000 frivolous penalties . . . for 2006" are due. (ECF No.24, PageID.133, 153.)

[4] As with the 2006 penalties, a disjunction exists between the amount charged on the 2007 Form 4340, $75,000 (indicating 15 penalties), (ECF No. 24, PageID.226-228), and Plaintiff's argument that "at least eight $5,000 penalties" can be assessed, (ECF No. 24, PageID.153).

270.) Each stated, "This is an issue of currency for cause. Deposit to the U.S. Treasury and charge the same to: INTERNAL REVENUE SERVICE[.] For Further Credit to the Account of RANDY J CHAFFEE." (*Id.*) One ordered Defendant's full salary, $19,428, to be paid to Treasury, while the other ordered a payment of $676. (*Id.*)

Finally, Defendant included a letter, dated April 8, 2008, with his 2006 or 2007 materials. (ECF No. 24, PageID.271; *see also* ECF No. 24, PageID.139.)[5] It stated that the "1099 O.I.D. and 1040 form is to identify me as the sponsor for the credit that funded the Treasury Bill in the first place; proof that a federal tax debt exists; and proves prepayment using my credit." (ECF No. 24, PageID.271.) The letter also asserted that a "form 56 is enclosed to show that Treasury Secretary Henry Paulson has fiduciary authority to make the proper adjustments to the account." (*Id.*)

Similar documents appear in the 2007 tax-year filings. A corrected W-2 attempted to adjust his previously reported income from $19,116 to $0. (ECF No. 24, PageID.288.) Another money order, bearing the same statement as the 2006 money orders, attempted to pay from credit $19,116 to the Treasury. (ECF No. 24, PageID.289.) A Form 56—an official IRS form entitled "Notice Concerning Fiduciary Relationship—informed the IRS that Henry Paulson, the Secretary of the Treasury, was Defendant's fiduciary. (ECF No. 24, PageID.290.) Another 1099-OID form was enclosed, showing $3749.02 OID for 2007. (ECF No. 24, PageID.292.)

---

[5] While Plaintiff notes the letter pertained to the 2006 tax year, it appears more germane to the tax years in which he claimed OID withholdings.

8

Finally, two demand letters from Treasury to Defendant are included. (ECF No. 24, PageID.293-296.) The first reminds Defendant that he owes $3794.06 for his 2002 taxes. (ECF No. 24, PageID.293.) Scribbled across its face is Defendant's response, which he apparently mailed in: "Accepted for value[.] Exempt from Levy[.] Randy Jay Chaffee 10/15/07[.] Deposit to the U.S. Treasury and charge the same to I.R.S." (ECF No. 24, PageID.293.) He wrote the same thing on the next page, which provided a money order form he could send—he also filled out the form, purporting to enclose the full amount due. (ECF No. 24, PageID.294.) The second demand letter requested $649 for 1998 taxes; Defendant wrote the same things on both the demand letter and the money order. (ECF No. 24, PageID.295-296.)

### 3.    Procedural History

In May 2018, Plaintiff filed the present lawsuit seeking judgment on the unpaid taxes and tax penalties and permission to enforce tax liens against Defendant's property at 1794 MacGregor Rd., in Vanderbilt, Michigan. (ECF No. 1, PageID.3-8.) In addition to Defendant Chaffee, Plaintiff also named the State of Michigan and Otsego County as defendants because they have, or might have, claims or interest in the Property. (ECF No. 1, PageID.2-3.)

On May 31, 2019, Plaintiff moved for partial summary judgment against Defendant. (ECF No. 24.) The motion seeks (1) judgment of $25,707.15 for unpaid taxes; (2) judgment of "$237,024.25, plus statutory additions and interest from May 30, 2019," or in the alternative $143,699.83, for tax penalties assessed due to Defendant's frivolous tax filings; and (3) enforcement of tax liens against the Property. (ECF No. 24, PageID.127, 153.)

Regarding the third count, Plaintiff's Proposed Order would attach the tax liens to "all property and rights to property belong to" Defendant, including the Property. (ECF No. 24, PageID.310.) Under the Order, the Property "may be sold pursuant to a future order of this Court." (*Id.*) The motion also mentions that Plaintiff anticipates resolving any lien priority issues with the other defendants through stipulations. (ECF No. 24, PageID.129 n.1.)

For his part, Defendant has filed a motion to dismiss. (ECF No. 26.) The basis for the motion is that the Court lacks personal jurisdiction over him. (ECF No. 26, PageID.312-313.)

Briefing is complete on both motions and they are now ready for resolution.

## B.    Standard of Review

Documents filed *pro se* are liberally construed. *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). Under Fed. R. Civ. P. 12(b)(2), a party can move for dismissal due to lack of personal jurisdiction. The plaintiff bears the burden of establishing jurisdiction, but where the courts decides the question "solely on written submissions and affidavits . . . the burden on the plaintiff is 'relatively slight.'" *Air Prods. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 549 (6th Cir. 2007) (citation omitted). "[T]he pleadings and affidavits must be viewed in a light most favorable to the plaintiff . . . ." *Id.*

Summary judgment under Rule 56(a) is proper where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The parties' arguments about whether a fact can be genuinely disputed must cite supporting materials in the record. Fed. R. Civ. P. 56(c)(1). The materials must be transformable into

a form that the court can admit into evidence. Fed. R. Civ. P. 56(c)(2). The moving party bears "the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-movant's case." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989) (quoting *Celotex Corp. v. Cartrett*, 477 U.S. 317, 323 (1986)) (internal quotation marks omitted). In making its determination, a court may consider the plausibility of the movant's evidence. *Matsushita*, 475 U.S. at 587-88. Summary judgment is also proper where the moving party shows that the non-moving party cannot meet its burden of proof. *Celotex*, 477 U.S. at 325.

The non-moving party cannot rest merely on the pleadings in response to a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Instead, the non-moving party has an obligation to present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos.*, 8 F.3d 335, 339-40 (6th Cir. 1993). The non-movant cannot withhold evidence until trial or rely on speculative possibilities that material issues of fact will appear later. 10B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2739 (3d ed. 1998). "[T]o withstand a properly supported motion for summary judgment, the non-moving party must identify specific facts and affirmative evidence that contradict those offered by the moving party." *Cosmas v. Am. Express Centurion Bank*, 757 F. Supp. 2d 489, 492 (D. N.J. 2010). In doing so, the non-moving party cannot simply assert that the other side's evidence lacks credibility. *Id.* at 493.

## C.    Arguments and Analysis

Taking the parties' motions together, the following four issues must be resolved: (1)

11

whether the Court has personal jurisdiction over Defendant; (2) whether Plaintiff is entitled to judgment on Defendant's unpaid taxes; (3) whether Plaintiff is entitled to judgment on tax penalties assessed against Defendant; and (4) whether Plaintiff is entitled to an order permitting enforcement of tax liens against Defendant's property. I will address each issue in turn.

### 1.   Personal Jurisdiction

The nub of Defendant's motion to dismiss is this:

> I, Randy J. Chaffee, now, challenge the Plaintiff to prove/evidence, in writing, on/in the official record, fact evidence of personal jurisdiction over me, as to what I said, did (contact), or signed (contract) to become a 'person' subject to this US court, as a man that has not elected to become a U.S. Citizen, or to contract with the same.

> Therefore, upon the Plaintiff's failure to evidence personal jurisdiction, as challenged. [*sic*] I motion the court to dismiss for its lack of evidenced personal jurisdiction which creates a general jurisdiction want of jurisdiction, essentially lacking a declaration of law from the Plaintiff for the court to rely upon for 'subject matter jurisdiction'. This case must be dismissed, as a matter of law, forthwith.

(ECF No. 26, PageID.313.) There follows an affidavit with all manner of supporting averments: Defendant is not a resident of the United States, he has no contract with the United States, his property is not "land of the United States" or owned by the United States, and he does not consent to the United States' laws. (ECF No. 26, PageID.313-314.) Defendant reiterates these arguments in his reply brief. (ECF No. 33, PageID.370-371.)[6]

---

[6] Most of Defendant's reply is preoccupied with proving that the opposing attorney committed fraud. (ECF No. 33, PageID.372-375.) He attaches a letter from the attorney stating, "Enclosed are documents . . . that I intend to use to support the government's claims." (ECF No. 33, PageID.378.) He then attaches two of those documents. The first is a notary public's certificate of service from March 12, 2009, declaring that she sent Defendant by certified mail a copy of his 1998 Forms 1040 and 4852. (ECF No. 33, PageID.379.) The second document is a copy of the envelop in which the notary public sent the documents. (ECF No.

To begin, Defendant's argument is frivolous as it apparently relies on sovereign-citizen type grounds, such as his ability to shuffle off state and national laws at his pleasure. *See generally* Jessica K. Phillips, *Not All Pro Se Litigants are Created Equally: Examining the Need For New Pro Se Litigant Classifications Through the Lens of the Sovereign Citizen Movement*, 29 Geo. J. Legal Ethics 1221, 1226 (2016) (discussing the underlying theories). Courts routinely find claims like these to be bunk. See *Payne v. Kilda*, 2016 WL 491847, at *3-4 (E.D. Mich. Jan. 6, 2016). Defendant has been told as much in previous litigation in this Court. *See United States v. Chaffee*, 2015 WL 900235, at *3 (E.D. Mich. Mar. 3, 2015).

With regard to jurisdiction in particular, the 10th Circuit has noted that "an individual's belief that her status as a 'sovereign citizen' puts her beyond the jurisdiction of the courts 'has no conceivable validity in American law.'" *Charlotte v. Hansen*, 433 F. App'x 660, 661 (10th Cir. 2011) (citation omitted); *see also United States v. Mundt*, 29 F.3d 233, 237 (6th Cir. 1994) (Sixth Circuit rejected as "without merit and patently

---

33, PageID.380.) Defendant observes that the envelope is postmarked "12 MAR 2009, from ACHORAGE AK," and that "there is no certified mail sticker on that envelope," (ECF No. 33, PageID.373). Something is amiss here, Defendant suspects:

> So, the questions that arise are what plausible explanations can [the opposing attorney] offer to explain why and how a letter sent from Michigan to Kansas City, Missouri would end up being postmarked in Anchorage, Alaska on the same day that it was sent from Michigan and why the envelope with the Anchorage, Alaska postmark does not have a certified mail sticker?

(*Id.*) What is more, these two documents were omitted from Plaintiff's filings in this Court—an obvious coverup, in Defendant's opinion. (ECF No. 33, PageID.373-374.)

To state the argument is nearly to expose its frivolousness. The postal markings from March 2009 do not show the opposing attorney's fraud a decade later. Even so, it is unclear why any of this matters—is Defendant claiming he did not receive copies of his own 1998 tax submissions? Those documents are in the record, and he no doubt could have relied on his own copies of the filings.

frivolous" the argument that the court "lacked jurisdiction over him because he is solely a resident of the state of Michigan and not a resident of any 'federal zone' and is therefore not subject to federal income tax laws"); *Smith-Bey v. Roy*, 2018 WL 3979661, at *2 (D. Minn. July 16, 2018) ("Smith-Bey contends that he is improperly detained because he is a sovereign citizen and therefore the Olmsted County District Court that convicted him did not have personal jurisdiction over him. The Eighth Circuit has definitively and repeatedly held that the argument that a person may not be subjected to federal or state laws on the basis of supposed sovereign citizenship is 'meritless,' 'absurd,' and 'entirely frivolous.'"). Therefore, Defendant's contention is frivolous.

It fails on the merits too. "Serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant . . . who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located . . . ." Fed. R. Civ. P. 4(k)(1)(A). Thus, "Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons." *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014). Under Michigan law, courts can "exercise general personal jurisdiction over the individual" based on "[p]resence in the state at the time process is served." Mich. Comp. L. § 600.701(1); *Haefner v. Bayman*, 419 N.W.2d 29, 31 (Mich. Ct. App. 1988) ("Because respondent in the instant case was personally served in Dearborn, Michigan, the court had personal jurisdiction."). In this case, process was served on Defendant at 1794 McGregor Rd., Vanderbilt, Michigan 49795. (ECF No. 6, PageID.23.) Consequently, Defendant was within the jurisdiction of Michigan, and therefore is within this Court's jurisdiction as well. *See United States v. Wells Fargo Home Mortg.*, 631 F. App'x 632, 635 (10th Cir. 2015)

(rejecting argument that the parties were citizens of a state, not the United States, "[b]ecause the [parties] are citizens of Oklahoma, therefore, the Northern District of Oklahoma properly exercised personal jurisdiction over them").

For these reasons, I recommend denying Defendant's motion to dismiss.

### 2.      Unpaid Taxes

Plaintiff seeks judgment on unpaid taxes assessed against Defendant. (ECF No. 24.) The Secretary of Treasury "is authorized and required to make the inquiries, determinations and assessments of all taxes (including interest, additional amounts, additions to the tax, and assessable penalties)," and the Secretary must specifically "assess" the taxpayer's returns. 26 U.S.C. § 6201(a). "An 'assessment' amounts to an IRS determination that a taxpayer owes the Federal Government a certain amount of unpaid taxes." *United States v. Fior D'Italia, Inc.*, 536 U.S. 238, 242 (2002); *see also* 26 U.S.C. § 6203 ("The assessment shall be made by recording the liability of the taxpayer in the office of the Secretary in accordance with rules or regulations prescribed by the Secretary."); *Rambo v. United States*, 492 F.2d 1060, 1061 n.1 (6th Cir. 1974) ("An assessment is an administrative determination that a certain amount is currently due and owing as a tax.").

Proving liability on assessments is straightforward. "It is well established in the tax law that an assessment is entitled to a legal presumption of correctness—a presumption that can help the Government prove its case against a taxpayer in court." *Fior D'Italia, Inc.*, 536 U.S. at 242. "Certificates of assessments and payments are generally regarded as being sufficient proof, in the absence of evidence to the contrary, of the adequacy and propriety of notices and assessments that have been made." *Gentry v. United States*, 962

F.2d 555, 557 (6th Cir. 1992). Thus, as long as the assessment has an evidentiary foundation, "the Government is awarded an initial presumption of correctness for its assessment, placing the burden of disproving such assessments on the taxpayer." *United States v. Hammon*, 277 F. App'x 560, 563 (6th Cir. 2008).

The Form 4340 Certificate of Assessments therefore suffices to establish the government's *prima facie* case. *See, e.g.*, *United States v. Lapso*, 2019 WL 1790903, at *1 (N.D. Ohio April 24, 2019) ("Assessments are presented through Certificates of Assessments, Payments, and Other Specified Matters, which are known as Forms 4340. Forms 4340 are presumptive proof of the assessments, abatements, payments, and credits for a particular tax period for a particular taxpayer as of a particular date, and these forms provide prima facie proof of a taxpayer[']s liabilities."); *United States v. Smith*, 2012 WL 359659, at *2 (W.D. Ky. Feb. 2, 2012) ("A certificate of assessments and payments [*i.e.*, Form 4340] is proof that tax assessments were actually made and establish the United States' *prima facie* case as to the taxpayer's liability.").

"Once the Government establishes presumptive tax liability, the taxpayer challenging an assessment 'carries the burden of proving the assessment wrong.'" *United States v. Nugent*, 300 F. Supp. 3d 932, 937 (E.D. Ky. 2018) (*quoting McDermitt v. United States*, 954 F.2d 1245, 1251 (6th Cir. 1992)). "The defendant must 'point to affirmative evidence that contradicts the Secretary's assessment of his liability.'" *Id.* (citation omitted). The taxpayer can also shift the burden back to the government by making reasonable denials that the assessment is accurate. *Hammon*, 277 F. App'x at 563. "Vague and general

denials of the accuracy of the Government's assessment, however, are insufficient to constitute a reasonable denial." *Id.*

In this case, Plaintiff has presented Forms 4340—detailed in the fact section above—to establish Defendant's tax assessments. These Forms demonstrate tax liabilities for each year from 2003 through 2008. A declaration from an IRS revenue officer brings these sums up to date, establishing the current balances—mentioned above—as of May 30, 2019. (ECF No. 24, PageID.190-192.) All of these materials constitute presumptive proof of Defendant's liability.

Plaintiff is therefore entitled to judgment unless Defendant has met his burden. I suggest he has not. Defendant does not argue that the sums are incorrect or present any evidence to that effect. (ECF No.30, PageID.327-334.) Instead, the gist of Defendant's response appears to be that he sent Plaintiff a letter on September 6, 2017, exercising his statutory right to request a certified assessment; he has received no response, he claims. (ECF No.30, PageID.327.) The letter, which he has attached to his brief, asserted he did not understand the IRS's tax computations and "would appreciate it if the person reading this letter would have the designated IRS Assessment Officer send me a certified assessment and a copy of the supporting record used to make the assessments." (ECF No.30, PageID.337.) The letter goes on to state that once he received a response, he would have the record verified and make arrangements to pay the assessments. (*Id.*)

To Defendant's mind, Plaintiff's failure to respond to this letter somehow moots the case. (ECF No.30, PageID.328 ("Conditional Respondent [*i.e.*, Defendant] has seen no evidence nor been presented with evidence that his September 6, 2017 letter coupled with

the non-response of the IRS, does not render moot everything in this matter prior to that date."). Defendant admits receiving "a packet of documents" from the opposing attorney but contends they were non-responsive to his request because (as best I can tell from his argument) the attorney was not the designated Assessment Officer nor were the documents certified by such an officer. (ECF No.30, PageID.329-330.)[7]

Defendant is correct that he was entitled to information regarding the assessments—he is incorrect that he failed to receive that information. Under 26 U.S.C. § 6203, "Upon request of the taxpayer, the Secretary shall furnish the taxpayer a copy of the record of the assessment." The regulations further identify the information to be furnished upon request: "If the taxpayer requests a copy of the record of assessment, he shall be furnished a copy of the pertinent parts of the assessment which set forth the name of the taxpayer, the date of assessment, the character of the liability assessed, the taxable period, if applicable, and the amounts assessed." 26 C.F.R. § 301.6203-1. These mandates can be fulfilled, however, by providing Forms 4340. *See Gentry*, 962 F.2d at 557 ("[T]he certificate [of assessments and payments] provides all of the specific information required by . . . [§] 6203 and Treasury Regulation § 301.6203-1."); *see also United States v. Miller*, 661 F. App'x 445,

---

[7] In addition, Defendant seems to think that the existence of the letter, which the opposing party must have known about, proves the attorney committed fraud by claiming in the complaint that Defendant had refused to pay the assessments. (ECF No.30, PageID.328-329.) Because I conclude that Defendant was provided everything he was entitled to, there is no reason to infer fraud in the complaint. Defendant does not dispute that he has failed to pay the assessed amounts.

Finally, tucked in an affidavit at the end of his brief, Defendant presents litany of sovereign-citizen style contentions—*e.g.*, there is no evidence that he has chosen to become a United States citizen, that the Property (in Vanderbilt, Michigan) is located in the United States, or that he resides in the United States. (ECF No.30, PageID.333-334.) As addressed above, these contentions are frivolous. In any case, Defendant does not connect them to his response, which hinges on his September 2017 letter.

447 (7th Cir. 2016) ("IRS Form 4340 supplies all of the information that Miller is entitled to under the statute and regulation."); *Koff v. United States*, 3 F.3d 1297, 1298 (9th Cir. 1993) ("[T]he government has produced Certificates of Assessments and Payments on Form 4340, which set forth all the information this regulation [*i.e.*, 26 C.F.R. § 301.6203-1] requires . . . ."); Rev. Rul. 07-21, 2007-1 C.B. 865 (Apr. 2, 2007) ("In response to a taxpayer's request under section 6203 and the regulation for 'a copy of the record of assessment,' the Service is not required to provide any particular form or document and may choose among documents that contain the items of information listed in the regulation. . . . [T]he Service may provide Form 4340 . . . because [it] identifies the taxpayer, states the character of the liabilities assessed, the tax period giving rise to the assessment, the amount of the assessment, and the date of the assessment.").

Here, there is no dispute that Defendant received the Forms 4340—at the very least, he obtained them in this case. Those records contained all the information required by the regulation: Defendant's name, the assessment date, the nature of the assessment, the applicable tax period, and the assessment amounts. (ECF No. 24, PageID.159-198.) The forms were certified by a Treasury officer at "the direction of the Secretary of the Treasury." (ECF No. 24, PageID.159, 163-164, 169-170, 173-174, 179-180, 185-186, 189.) Defendant has failed to identify any deficiencies in these forms.

Even if errors existed, Defendant would not be entitled to the relief he seems to request, *i.e.*, mooting the case or somehow invalidating the assessments. As courts have noted, violations of 26 C.F.R. § 301.6203-1 do not invalidate assessments. The Tenth Circuit stated,

> [T]he validity of an assessment cannot rest on whether or when the taxpayer invokes his right to request the information set out in section 301.6203-1. . . . [N]o section of the Internal Revenue Code or the regulations imposes a sanction for the IRS's failure to comply with this provision, and we are not willing to construe it in a manner that would invalidate by implication an otherwise valid assessment.

*Howell v. United States*, 164 F.3d 523, 525-526 (10th Cir. 1998); *United States v. Oyer*, 2009 WL 10689995, at *1 (D. Kan. Mar. 17, 2009) ("Even if defendant demonstrated that the documents provided to her are inadequate, dismissal would not be appropriate. Tax assessments are not invalidated by failure to comply with § 301.6203-1."); *cf. Intersport Fashions West, Inc. v. United States*, 84 Fed. Cl. 454, 460-462 (Fed. Cl. 2008) (discussing cases including *Howell* in which "plaintiffs have been unsuccessful in claiming that assessments against them were erroneous due to inadequacies of documents provided to them by the government"). Consequently, even assuming that Plaintiff violated the statute or regulation in responding to Plaintiff's request, the assessments remain valid.

For these reasons, I conclude that the tax assessments are valid and Plaintiff is entitled to judgment on this issue.

### 3.      Tax Penalties

#### i.      General Law

Under 26 U.S.C. § 6702(a), civil penalties can be assessed for frivolous tax returns: A person shall pay a penalty of $5,000 if:

> (1) such person files what purports to be a return of a tax imposed by this title but which—
>
> (A) does not contain information on which the substantial correctness of the self-assessment may be judged, or

20

     (B) contains information that on its face indicates that the self-assessment is substantially incorrect, and

     (2) the conduct referred to in paragraph (1)—

     (A) is based on a position which the Secretary has identified as frivolous under subsection (c), or

     (B) reflects a desire to delay or impede the administration of Federal tax laws.

The government bears the burden of proving a taxpayer's liability for a penalty. 26 U.S.C. § 6703(a).

"The test for frivolousness under section 6702(a) is purely an objective one, and is met when the position taken by the individual has no basis in fact or law." *Gillett v. United States*, 233 F. Supp. 2d 874, 881 (W.D. Mich. 2002); *Lutz v. United States*, 1983 WL 2000, at *2 (E.D. Mich. Dec. 7, 1983) ("[T]he word frivolous [in § 6702] means having no basis in fact."). "[A] tax return[] is frivolous if it is contrary to established law and unsupported by a reasoned, colorable argument for change in the law." *Coleman v. C.I.R.*, 791 F.2d 68, 72 (7th Cir. 1986).

Pursuant to § 6702(c), the IRS has identified various "positions" it deems frivolous for purposes of § 6702(a). I.R.S. Notice, *Frivolous Positions*, 2010-17, 2010 WL 1347082 (Apr. 2010). One such position is that "[w]ages, tips, and other compensation received for the performance of personal services are not taxable or are offset by an equivalent deduction for the personal services rendered . . . ." *Id.* Another: a return that reports withheld taxes "that is obviously false because it exceeds the taxpayer's income as reported on the return or information on supporting documents filed with the return." *Id.* Finally:

> A taxpayer may use a Form 1099-OID, Original Issue Discount, (or another Form 1099 Series information return) as a financial or other instrument to obtain or redeem (under a theory of "redemption" or "commercial redemption") a monetary payment out of the United States Treasury or for a refund of tax, such as by drawing on a "straw man" or similar financial account maintained by the government in the taxpayer's name (see paragraph (20), above); a taxpayer may file a Form 56, Notice Concerning Fiduciary Relationship, that names the Secretary of the Treasury or some other government employee as a fiduciary of the taxpayer and requires the Treasury Department to honor a Form 1099-OID as a financial or redemption instrument . . . .

*Id.* Positions that are the "same as or similar to" these positions are frivolous. *Id.* According to the Notice, the frivolous position must appear on the face of the documents. *Id.*

The caselaw has found similar positions to be frivolous. In general, "When it clearly appears that a taxpayer received income but then seeks to disclaim the receipt of income based upon a frivolous argument, the penalty may be justified." 14A Hertsel Shadian, *Mertens Law of Federal Income Taxation*, § 55:67 (Oct. 2019 update). "A taxpayer cannot avoid tax by filing a return that reports zero income or zero tax liability." *Id.* at § 55:70; *see also* 1 Arthur H. Boelter, *Tax Penalties & Interest*, § 5:52 (Nov. 2018 update) (identifying as frivolous the position that "a taxpayer can escape a tax by filing a return that reports zero income and zero tax liability"). Thus, "[n]umerous federal courts have upheld the imposition of the . . . sanction by the IRS pursuant to 26 U.S.C. § 6702(a), where . . . a tax form is filed stating that an individual had no income, but the attached W-2 forms show wages, tips, or other compensation of greater than zero." *Gillett*, 233 F. Supp. 2d at 881. Another court noted, as an example, that frivolousness could be found in "a return or purported return which contains insufficient information by which to calculate the tax, or contains inconsistent information, or otherwise reveals a frivolous position or desire to

impede the tax laws." *Gimelli v. United States*, 1984 WL 241, at *2 (E.D. La. Feb. 17, 1984). "Thus, tax returns with zeros in the income section where income actually existed are 'substantially incorrect and frivolous, thus making [taxpayers] liable for the frivolous return penalty.'" *United States v. Shaw*, 2018 WL 4682333, at *7 (D. Nev. Sept. 28, 2018).

Many courts have examined returns like those at issue in this case, finding them frivolous or obstructionist under § 6702(a)(2)(A) or (B). In one relevant case, the taxpayer reported zero income except for unemployment compensation, then asked for a refund larger than the compensation on the basis of purported income tax withholdings. *Evans v. C.I.R.*, T.C. Summ. Op. 2016-34, 2016 WL 3660792, at *1 (T.C. July 5, 2016). He also included a statement on his W-2 contending that he was not an employee for income tax purposes, a stance he took at the subsequent trial. *Id.* at *1, *4. The court relied on the frivolous position identified by the IRS's Notice regarding zero-income tax returns. *Id.* at *3. There was no question that the taxpayer had presented a frivolous return. *Id.* at *4.

In *Gautz v. United States*, the petitioner reported zero taxable income despite his W-2 showing over $6000 in income. 577 F. Supp. 1015, 1016 (E.D. Mich. 1984). A penalty was assessed, which the taxpayer paid in part before suing for a refund of the penalty. *Id.* In addition, his requested refund exceeded the amount of withholdings listed on his W-2. *Id.* In his complaint he asserted "that he is not liable for federal income tax because he did not affix his signature on the tax return." *Id.* This was clearly the sort of obstruction that § 6702 addressed, the court noted. *Id.* Continuing, "Plaintiff has failed to file an answer to this motion and thereby indicate some justification for his claim that he has incurred no tax liability. Indeed, plaintiff has not only claimed that he has incurred no tax liability, he has

23

in addition requested a refund of $1,900 when his W–2 forms indicated that only $560 was withheld by his employer." *Id.* In other words, the taxpayer failed to proffer any rationale for reporting zero income, and the tax forms he submitted made no sense. These issues were sufficient to satisfy § 6702(a)(2). Similarly, in *Umoren v. C.I.R.*, the court found a desire to impede the tax laws when the taxpayer filings contained inconsistencies and claimed huge refunds based off much less income. T.C. Memo 2012-117, 2012 WL 1392919, at *1-3 (T.C. April 23, 2012),

For another example, in *McNeil v. C.I.R.*, the taxpayer "reported zero income, withholding of $12,553, and a $12,553 refund due." T.C. Memo 2011-150, 2011 WL 2559802, at *1 (T.C. June 28, 2011). The taxpayer submitted a similar return the following year. *Id.* The court had no problem finding that the returns met all of the requirements in § 6702(a), including that they were based on frivolous positions. *Id.* at *7; *see also Whitaker v. C.I.R.*, T.C. Memo 2017-192, 2017 WL 4331057, at *5 (T.C. Sept. 27, 2017) (noting that a similar "zero return" was frivolous).

The court in *McDonald v. United States* stated that a tax return reporting zero income but requesting a refund of withholdings was frivolous, as it was based on the position that no statute imposed an income tax. 2003 WL 22992202, at *2 (N.D. Tex. Nov. 25, 2003); *see also Stark v. United States*, 127 F. App'x 355, 355-356 (9th Cir. 2005) (finding frivolous a tax return that reported zero income because the taxpayer alleged the income was non-taxable and requesting a refund of withheld amounts); *Alexander v. C.I.R.*, T.C. Memo 2012-75, 2012 WL 947087, at *3 (T.C. Mar. 20, 2012) ("This Court and others have repeatedly characterized returns reflecting zero income and zero tax as frivolous."

(citation omitted)); *Yuen v. United States.*, 290 F. Supp. 2d 1220, 1224 (D. Nev. 2003) (finding a zero-income tax return frivolous where taxpayer "also attached explanations professing that no provisions of the Internal Revenue code make him liable for the income tax").

Penalties are assessed per return. *United States v. Threlkeld*, 2015 WL 5725830, at *8 (S.D. W. Va. Sept. 30, 2015). As such, "if an individual files multiple frivolous tax returns for the same calendar year, they may be assessed a penalty for each frivolous return under Section 6702." *Id.*; *see also Whitaker*, 2017 WL 4331057, at *4 (same). A tax return includes information required to be submitted by the Secretary of the Treasury. 26 U.S.C. § 6011(a). It is "a document that is used to report a tax liability." *Kestin v. C.I.R.*, 153 T.C. No. 2, 2019 WL 4072309, at *8 (T.C. Aug. 29, 2019) (citation omitted). Generally, a return must provide enough information to calculate the tax liability, purport to be a return, be a reasonable attempt to comply with the law, and be executed under oath. *Id.*; *see also* 13 *Mertens Law* at § 47:9. A filing that shows income (or lack of it) and claims a refund "constitute[s] a return within the meaning of § 6702." *Sisemore v. United States*, 797 F.2d 268, 270 (6th Cir. 1986). The penalties in § 6702 extend beyond actual returns, however, and reach other documents that "merely 'purport[] to be a return.'" *Kestin*, 2019 WL 4072309, at *8 (*quoting* 26 U.S.C. § 6702(a)).

### ii.    1998 Tax Submission

The first penalty to consider was assessed for 1998. Plaintiff seeks a single $5000 penalty for this year. (ECF No. 24, PageID.148.) It notes that Defendant earned $16,664 in 1998 but reported only $3627 on his Form 1040 tax return and zero income on the Form

4852, on which he also claimed to have had income withheld. (*Id.*) The denial of income (aside from unemployment compensation) on his tax return prevented assessing the "substantial correctness of his self-assessment," while the Form 4852 was facially frivolous for denying any income while noting income had been withheld. (*Id.*) Plaintiff ends by stating that Defendant's "conduct reflected his desire to delay or impede the administration of Federal tax laws," and therefore a penalty is warranted. (*Id.*) Defendant's briefing does not address this argument.

The statutory analysis begins by asking whether the filings purported to be a tax return. 26 U.S.C. § 6702(a)(1). Under the law above, the Form 1040 is a tax return, listing income, denying tax liability, and claiming a refund. *See Sisemore*, 797 F.2d at 270; *Kestin*, 2019 WL 4072309, at *8. The Form 4852 signed the same day and evidently submitted with the Form 1040 is part of the return for purposes of § 6702 penalties. *See, e.g.*, *Alexander*, 2012 WL 947087, at *3 (assessing Forms 4852 as part of the return when deciding whether the returns were frivolous); *Grunsted v. C.I.R.*, 136 T.C. 455, 459-460 (T.C. 2011) (same). Therefore, these materials constitute a purported tax return.

The next question is whether the return lacks enough data to determine its "substantial correctness" or contains information demonstrating it is "substantially incorrect." 26 U.S.C. §§ 6702(a)(1)(A)-(B). The information Plaintiff provided is incorrect or, at the very least, jumbled enough to make assessing it impossible. The withholdings reported on Form 1040 and detailed in Form 4852 are mysterious. The latter form purports to address the income and withholdings from his employment at Chaffee Excavating, but it claims that withholdings were taken from his zero income. (ECF No. 24, PageID.240.)

Further, the form instructed Defendant to refer to his Social Security statement to ensure that the statement reflects the earnings on Form 4852. (*Id.*) Defendant failed to do that, as the Social Security statement showed $16,664 in earnings. (ECF No. 24, PageID.236.) Consequently, the return itself was incorrect, a fact that could be gleaned from the anomalous Form 4852 showing withholdings based on zero income.

The final question is whether the return was based on a frivolous position or displayed "a desire to delay or impede the administration of Federal tax laws." 26 U.S.C. § 6702(a)(2). Plaintiff suggests both that the position was frivolous and that the return showed intent to impede the tax laws. (ECF No. 24, PageID.148.) The return itself does not expressly announce a position explaining Defendant's reasoning. This distinguishes it from some of the cases above in which the taxpayer's rationale was written on the filings. *See, e.g.*, *Yuen*, 290 F. Supp. 2d at 1224; *Evans*, 2016 WL 3660792, at *1. Nonetheless, the returns falls within a position the IRS has identified as frivolous: claimed withholdings exceed or are disproportionately high compared to income on the return or supporting documents. I.R.S. Notice, *Frivolous Positions*, 2010 WL 1347082, at *1 (item 22). Here, the claimed withholdings on the Form 1040 were a little over 50 percent of his total reported income, all coming from unemployment compensation. (ECF No. 24, PageID.238-239.) And, of course, the withholdings reported on the Form 4852 vastly exceeded the zero income he claimed on that form. Additionally, this case falls within the logic of *Evans v. C.I.R.*, where the taxpayer similarly sought large refunds based on withholdings and unemployment compensation. 2016 WL 3660792, at *1, 4. For these reasons, I suggest that the 1998 is frivolous.

27

Accordingly, I conclude that Plaintiff is entitled to impose one § 6702 penalty for the 1998 tax year.

### iii.   2000-2004 Tax Submissions

Plaintiff seeks judgment on one tax penalty for 2000. (ECF No. 24, PageId.148-149.) The arguments (or lack thereof, in the case of Defendant, who has not addressed any tax penalty issues) and analysis are largely the same for 2000 (and the subsequent years) as they were for 1998. The Forms 1040 and 4852 constitute the return for purposes of assessing liability for each year. For 2000, I agree with Plaintiff's argument that Defendant's failure to include all of his earnings on his Form 1040 was an omission that stymied assessment of the return's accuracy. (ECF No. 24, PageID.149.) Recall that his earnings were $22,890.75, as reported on the Social Security statement; he only listed $3332 in unemployment compensation on the Form 1040. (ECF No. 24, PageID.236, 241-242.) Also impeding the review of his return was the Form 4852's report of withholdings from his zero income while working at Chafee Excavating. (ECF No. 24, PageID.240.) For the same reasons explained above regarding the 1998 return, the 2000 Form 4852 also provides grounds for deeming the 2000 return frivolous. Thus, Plaintiff is entitled to impose a § 6702 penalty for 2000.

The reasoning applicable to years 2001 through 2004 parallels that above. In each year, he left out income from the Form 1040, reported withholdings from of zero income on the Form 4852, and sought to recoup the federal withholdings as a refund. (ECF No. 24, PageID.236, 244-251, 253-254.) These facts satisfy all the requirements of § 6702: documents purporting to be a return were filed; the information was incorrect or the filings

28

were too unclear to judge the accuracy of the returns; and reporting withholdings based on zero income in an apparent effort to obtain tax refunds constitutes frivolousness.

One final note about tax years 2001 and 2002. The Forms 4340 for those years—the forms used to record the penalties the IRS assessed—show two penalties for each year. (ECF No. 24, PageID.202-203, 206-208.) In this Court, however, Plaintiff argues only that it can impose "at least" one penalty for each of these years. (ECF No. 24, PageID.149.) Because Plaintiff has not argued for a second penalty for either year, nor identified a second frivolous return filed either year, only one penalty for each year should be imposed. It appears that the sums Plaintiff requests are based on one penalty per year (ECF No. 24, PageID.127, 192.)

For these reasons, Plaintiff is entitled to one penalty for each year from 2000 through 2004.

### iv.    2005 Tax Submission

Two penalties are sought for 2005.[8] (ECF No. 24, PageID.218-220.) As noted in the facts above, in 2005 Defendant filed two returns: one claimed $5042 in income from unemployment compensation and withholdings of $52,832; the other reported $26,131 in OID income, which was withheld and claimed as a refund. (ECF No. 24, PageID.256-260.)

Each return merits a § 6702 penalty. As with the previous years' returns, the filings here purported to be two returns. 26 U.S.C. § 6702(a)(1). On one Form 1040, (ECF No. 24, PageID.256-257), he underreported income (as compared to the Social Security

---

[8] Plaintiff's brief asks for "at least two $5,000 frivolous penalties on Chaffee for the 2005 tax year." (ECF No. 24, PageID.151.) But it does not identify more than two returns and thus cannot claim two penalties.

29

statement, (ECF No. 24, PageID.236)) and claimed withholdings vastly greater than income; his Form 4852 did not match any of the information on the Form 1040, (ECF No. 24, PageID.261). The result was substantially inaccurate, and the tangle of filings made it impossible to ascertain the return's correctness in any event. 26 U.S.C. §§ 6702(a)(1)(A)-(B). Finally, the return is frivolous under § 6702(a)(2)(A) because it claims "an amount of withheld income tax . . . is obviously false because it exceeds the taxpayer's income as reported on the return" and on the Social Security statement. I.R.S. Notice, *Frivolous Positions*, 2010 WL 1347082, at *1 (item 22).

On the other return, the income was reported inaccurately (compared to the Social Security statement (ECF No. 24, PageID.236)) and every line was blank or labeled "0" aside from noting the OID $26,131, (ECF No. 24, PageID.256-257), which was also noted in his Form 1099-OID, (ECF No. 24, PageID.258). This did not reflect the Form 4852. (ECF No. 24, PageID.261.). The result was a substantially inaccurate return that could not be unraveled. 26 U.S.C. §§ 6702(a)(1)(A)-(B).

And it was a frivolous one. Plaintiff argues that the frivolousness comes from the fact that "there can be no federal tax withheld from OID income." (ECF No. 24, PageID.150-151.) "The Form 1099-OID," Plaintiff explains, "ordinarily is issued by debt issuers to debt holders so that debt holders can include accrued OID interest income during the year in their gross income as required by 26 U.S.C. § 1272a." (ECF No. 24, PageID.151 n.3.) "Because interest income is accruing but not paid until at the time of redemption, there can be no federal income tax withheld from OID income." (*Id.*)

Plaintiff cites no authority for these propositions, and the Form 1099-OID itself includes a box for "Federal income tax withheld." (ECF No. 24, PageID.258.) Current instructions for the Form 1099-OID states that the box is for backup withholding if the OID is paid in cash. I.R.S., *2020 Instructions for Forms 1099-INT and 1099-OID*, 7 (Oct. 3, 2019), *available at* https://www.irs.gov/pub/irs-pdf/i1099int.pdf. Backup withholding applies to OID income in certain situations, such as when the taxpayer has underreported income or failed to provide a taxpayer identification number. 26 U.S.C. §§ 3406(a)(1), (h)(7); *see also* I.R.S., *Backup Withholding*, *available at* https://www.irs.gov/businesses/small-businesses-self-employed/backup-withholding (last accessed Oct. 23, 2019). It is not clear whether, under any reasonably conceivable scenario, this backup withholding framework applied here. It seems possible that the debt could have been redeemed and the full amount of OID paid to Defendant, which might trigger the withholding.

But other problems with the Forms 1099-OID and 1040 render the return frivolous. One is that even if backup withholding applied, only a percentage of the income would have been withheld. *See generally* I.R.S. Priv. Ltr. Rul. 88-31-055 (Aug. 5, 1988) ("OID is subject to backup withholding in the same circumstances as interest," and was, at the time of the ruling, withheld at a 20-percent rate); IRS, *Backup Withholding*, *supra* (noting the current 24 percent withholding rate). Here, Defendant claimed that the whole amount was withheld, and wanted a full refund. Because this is not how the withholding works, the return is frivolous and appears to be geared toward extracting money from the government. In that sense, it is materially similar to a position deemed frivolous by the IRS: "A taxpayer may use a Form 1099-OID, Original Issue Discount, (or another Form 1099 Series

31

information return) as a financial or other instrument to obtain or redeem (under a theory of 'redemption' or 'commercial redemption') a monetary payment out of the United States Treasury or for a refund of tax." I.R.S. Notice, *Frivolous Positions*, 2010 WL 1347082, at *1 (item 21). To be frivolous under the IRS's Notice, a position need only be similar to the listed items. *Id.* Therefore, the position here is similar to a listed item and is frivolous.

If that were not enough, Defendant's other notations on the Form show that the return based on the OID is frivolous. He purports to be the payer of the income, the recipient of which is a Bank. (ECF No. 24, PageID.258.) It is hard to see how he earns OID income by paying it. *See* I.R.S. Pub. 1281 (Rev. 8-2018), 2018 WL 4549361, at *1 (Aug. 2018) ("Persons (payers) making certain payments to payees must withhold and pay to the IRS a specified percentage . . . of those payments under certain conditions."). Moreover, he described the OID on the Form as "Pay to the United States Treasury: Checking Account Payment." (*Id.*) Somehow, then, he is purporting to pay the government. These notations show the frivolousness of the return.

For these reasons, I conclude that Plaintiff is entitled to judgment on two § 6702 penalties for the 2005 tax year.

### v. 2006 Tax Submissions

Plaintiff seeks "to impose at least three $5,000 frivolous penalties assessed against [Defendant] for 2006." (ECF No. 24, PageID.153.) That year, he filed three Forms 1040. (ECF No. 24, PageID.262-267.) The first reported $19,428 in "other income," the same amount appearing on his Social Security statement. (ECF No. 24, PageID.236, 262.) The problem, however, is that he also claimed that all of it had been withheld and he filed a

corrected W-2 asserting that he earned zero income from Chaffee Excavating; this filing allegedly corrected a previous report of $19,428 in income from that employer. (ECF No. 24, PageID.263, 268.) The earlier W-2 appears in two other filings, on which Defendant scribbled a money order apparently purporting to pay the Treasury the full income (on one of the W-2s) and $672 (on the other) but also charging the payments to the IRS. (ECF No. 24, PageID.269-270.) The other two Forms 1040 reported "other income" of $456.96 and $726, respectively, and asserted that the income had been fully withheld and was due as refunds. (ECF No. 24, PageID.264-267.)

These filings purported to be three tax returns, as they set out three statements of income, withholdings, tax liability, and refund entitlement. 26 U.S.C. § 6702(a)(1). They created a thicket of inconsistent data that, at the very least, obfuscated any assessment of the returns' accuracy, if not outright showed that the returns were substantially incorrect. 26 U.S.C. § 6702(a)(1)(A)-(B). It is impossible to determine where the income came from and why it was fully withheld.

Finally, the returns are frivolous. For one thing, the withholdings were "disproportionately high in comparison with the income reported on the return" and on the supporting documents. I.R.S. Notice, *Frivolous Positions*, 2010 WL 1347082, at *1 (item 21). The money orders also render the returns frivolous. The IRS has deemed as frivolous the arguments described in Revenue Ruling 2004-31. I.R.S. Notice, *Frivolous Positions*, 2010 WL 1347082, at *1 (item 21). Under that Ruling, the IRS describes "meritless" schemes in which individuals "'chargeback[]'" their own value from the Government . . . and then use that value to pay the individuals' debts. Participants in removal schemes often

attempt to offset, collect or 'redeem' their asserted claims by using or filing" various commercial forms. Rev. Rul. 2004-31, 2004-1 C.B. 617. That description appears substantially similar to what Defendant did here. The statement he stamped on the W-2s proclaims that it represents "an issue of currency for cause" paid to the Treasury and charged against the IRS as credit to Defendant's account. (ECF No. 24, PageID.269-270.) In other words, he endeavored to charge his debt to the government, while somehow issuing currency. Consequently, the returns are frivolous on this basis as well.

As noted above, the IRS appears to have originally assessed four penalties, which are reflected in the Form 4340. (ECF No. 24, PageID.222-224.) It appears that Plaintiff's motion seeks to recover a sum based on four penalties, (ECF No. 24, PageID.127, 192), although in the alternative it seems to settle for three penalties, (ECF No. 24, PageID.153). While not entirely clear, Plaintiff's argument appears to be that the Form 4340, without more, establishes entitlement to all four penalties. (ECF No. 24, PageID.146-147.)

The asserted basis for this contention comes from *United States v. Ledford*, in which the taxpayer objected because the government had not provided the Forms 1040 but only a Form 4340 to prove the penalties in question. 2010 WL 749843, at *4 (D. Colo. Mar. 3, 2010). The district court noted that the Magistrate Judge had concluded that "'Forms 4340 are admissible evidence pursuant to Fed.R.Evid. 803(6) and (8) and are the proper means of establishing the facts of the administrative assessment, and notice and demand for payment.' . . . Accordingly, Magistrate Judge Tafoya concluded that Plaintiff satisfied its burden as to the penalty assessments for the years 1983 through 1992." *Id.* (citation omitted). But the court nowhere explained the rationale for this conclusion. And the

34

Magistrate Judge was rejecting evidentiary arguments against the use of the Forms 4340—

*i.e.*, that they were "inadmissible hearsay; they were not prepared independently of specific

litigation; and they are unreliable." 2009 WL 5698243, at \*7 (D. Colo. Nov. 12, 2009),

*Rep. & Rec.*

Neither the District Judge nor the Magistrate Judge in *Ledford* suggested that the

Forms 4340 could prove a tax penalty even when, as here, the government has not pointed

to or provided any description of the underlying tax return giving rise to the penalty.

Indeed, Plaintiff's brief specifies only three returns for the 2006 tax year and none of the

other submitted materials suggest a fourth return was filed. In the absence of such proof or

relevant argument, I would decline the invitation to assess a fourth penalty. As such,

Plaintiff is entitled to judgment on three § 6702 penalties for the 2006 tax year.

### vi.     2007 Tax Submissions

Plaintiff seeks "to impose . . . at least eight $5,000 penalties for 2007." (ECF No.

24, PageID.153.) The request reflects the eight Forms 1040 Plaintiff filed that year, each

reporting income that was fully withheld and requesting a refund in the same amount, (ECF

No. 24, PageID.272-287); only one return reported income matching that on his Social

Security statement, (ECF No. 24, PageID.236, 278).

For many of the same reasons above, the 2007 returns meet all the requirements of

§ 6702(a). There are eight filings purporting to be returns, as there are eight Forms 1040

that report income, withholdings, tax liability, and refund entitlement. 26 U.S.C. §

6702(a)(1). It is impossible to make heads or tails of the returns, and thus their accuracy

cannot be assessed and they appear to be false. 26 U.S.C. § 6702(a)(1)-(2). And, finally,

they are frivolous for many reasons. For starters, like the 2006 returns, they boast of a disproportionately high level of withholdings compared to reported income. I.R.S. Notice, *Frivolous Positions*, 2010 WL 1347082, at \*1 (item 22). Likewise, he filed four letters and one W-2 that again purported to deposit the owed taxes to the Treasury by charging the IRS. (ECF No. 24, PageID.289, 293-296.) This position, as discussed above, is frivolous. I.R.S. Notice, *Frivolous Positions*, 2010 WL 1347082, at \*1 (item 21). Also included in the deluge of filings was a Form 1099-OID showing OID income of $3749.02, which was fully withheld; like the 2005 OIDs, Defendant was again marked as the payer and this time "Glen's Markets" was the recipient, with the description stating, "Pay to the United States Treasury[.] 1040-V attached[.] Groceries, Gasoline, RX[.]" (ECF No. 24, PageID.292.) This appears to be the basis for one of his Forms 1040. (ECF No. 24, PageID.284-285.) It is facially frivolous in the same respects as were the 2005 Forms 1099-OID.

To cap it off, Plaintiff included a Form 56 purporting to appoint the then-Secretary of the Treasury, Henry Paulson, as his fiduciary with authority to handle all commercial transactions. (ECF No. 24, PageID.290-291.) This matches, or is significantly similar to, a frivolous position identified by the IRS: "a taxpayer may file a Form 56, Notice Concerning Fiduciary Relationship, that names the Secretary of the Treasury or some other government employee as a fiduciary of the taxpayer and requires the Treasury Department to honor a Form 1099-OID as a financial or redemption instrument." I.R.S. Notice, *Frivolous Positions*, 2010 WL 1347082, at \*1 (item 21). Here, Defendant filed the Form 56 along with the Form 1099-OID that appears to direct payment to the Treasury. (ECF No. 24, PageID.292.) While neither Form charges Paulson with making the payment, Defendant

36

included a letter stating that "[a] copy of form 56 is enclosed to show that Treasury Secretary Henry Paulson has fiduciary authority to make the proper adjustments to the account." (ECF No. 24, PageID.297.) Thus, Plaintiff has directed Paulson to make adjustments (presumably based on Plaintiff's filings) that satisfy any liabilities. Accordingly, the return meets or is substantially similar to the position identified as frivolous.

As noted, the IRS appears to have originally assessed 15 penalties for 2007, which reflects the amount on the Form 4340. (ECF No. 24, PageID.226-228.) It appears that Plaintiff's primary request is for an amount based on more than eight penalties. (ECF No. 24, PageID.127, 192.) Again, the underlying argument seems to be that the Form 4340 can bear Plaintiff's burden. But for the reasons above (addressed regarding the 2006 return) I would reject that argument. Because only eight returns appear in the record, and Plaintiff has not described any additional frivolous returns, Plaintiff is entitled to judgment on eight § 6702(a) penalties for the 2007 tax year.

### vii.    2008 Tax Submission

Finally, although Plaintiff makes no mention of this fact, it appears that the initial sum it requests includes tax penalties for 2008—the alternative request for 19 tax penalties does not include the 2008 penalties. (ECF No. 24, PageID.133.) But as noted above, no return for that year is in the record. Thus, Plaintiff must be basing its entitlement to these penalties on the Form 4340. Yet, Plaintiff makes no argument regarding 2008 tax penalties. For the reasons above pertaining to the 2006 and 2007 tax penalties, I suggest that Plaintiff has not established any entitlement to penalties for 2008.

### viii.    Conclusion

In sum, then, I conclude that Plaintiff has proved entitlement to its alternative request for 19 penalties. (ECF No. 153.)

### 4.    Enforcement of Federal Tax Liens

Plaintiff seeks a judgment allowing it to enforce federal tax liens (to recoup the amounts owed by virtue of the judgments on unpaid taxes and tax penalties), including a sale of the Property (*i.e.*, 1794 MacGregor Rd., Vanderbilt, Michigan) pursuant to a future court order. (ECF No. 24, PageID.153-154.)

> Tax liens are provided for in 26 U.S.C. § 6321:
>
> If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, additional amount, addition to tax, or assessable penalty, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person.

The "breadth of the statute . . . 'reveals on its face that Congress meant to reach every interest in property that a taxpayer might have.'" *United States v. Barczyk*, 697 F. Supp. 2d 789, 792 (E.D. Mich. Mar. 24, 2010) (*quoting United States v. Nat'l Bank of Commerce*, 472 U.S. 713, 720 (1985)). The lien "shall arise at the time the assessment is made and shall continue until the liability for the amount so assessed (or a judgment against the taxpayer arising out of such liability) is satisfied or becomes unenforceable by reason of lapse of time." 26 U.S.C. § 6322. The government has a cause of action to reduce these owed amounts to judgment. 26 U.S.C. § 7403(a). When an action is brought, the court must

> proceed to adjudicate all matters involved therein and finally determine the merits of all claims to and liens upon the property, and, in all cases where a claim or interest of the United States therein is established, may decree a sale

38

of such property, by the proper officer of the court, and a distribution of the proceeds of such sale according to the findings of the court in respect to the interests of the parties and of the United States.

26 U.S.C. § 7403(c).

In the present case, Plaintiff contends—and Defendant does not dispute—that it has provided the appropriate notices of the assessments and penalties. (ECF No. 24, PageID.154.) Since Defendant is the sole owner of the Property, Plaintiff seeks a judgment that the federal tax liens have attached to the property and can be enforced. (*Id.*)

The Secretary assessed taxes penalties against Defendant, giving rise to liens on his property. 26 U.S.C. § 6322. The only issue at this point is whether Defendant owns the Property.[9] The deeds Plaintiff provides, discussed in the facts above, display that Defendant holds title to the property. (ECF No. 1, PageID.2; ECF No. 24, PageID.298-299.) Defendant has used the address on his tax and court filings. *See, e.g.*, ((ECF No. 15, PageID.79; ECF No. 24, PageID.238, 241; ECF No. 26, PageID.316.) Thus, there is no question that he is the owner, a proposition he has not disputed.

Defendant has not directly addressed this argument. The closest he came was the averment in his affidavit "[t]hat the location identified as '1794 McGregor Road, Vanderbilt, Michigan', is not evidenced as being land of the United States, or land owned

---

[9] When third parties have interests in the property, certain factors apply in the court's decision to order a sale. *See United States v. Rodgers*, 461 U.S. 677, 709-711 (1983). Here, defendants State of Michigan and Otsego County *might* have interests in the Property sought to be sold, but they have not participated in the briefing. Plaintiff anticipates that joint stipulations will resolve any possible interests of those parties. (ECF No. 24, PageID.129 n.1.) The proposed order here states merely that the Property "may be sold pursuant to a future order of this Court." (ECF No. 24, PageID.310.) Consequently, not only is it impossible now to assess Michigan's and Otsego's potential interests, it is also unnecessary because granting Plaintiff the relief it seeks would not affect those interests—the judgment would simply affirm the court's authority to order a future sale.

by 'The United States of America'." (ECF No. 30, PageID.333.) It is unclear whether his averment seeks to contest that the Property is *located* in the United States or that it is *owned* by the United States. If the latter, then the argument is irrelevant because the United States does not need to own the land for the tax lien to be enforced. If he is contesting the location of the Property, then the argument is frivolous. Even assuming that a lien could not be enforced on property located outside the United States, courts can take judicial notice of facts that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2). A court can "take judicial notice of a Google map and satellite image as a 'source[] whose accuracy cannot reasonably be questioned,' at least for the purpose of determining the general location of the home." *United States v. Perea-Rea*, 680 F.3d 1179, 1182 n.1 (9th Cir. 2012) (*quoting* Fed. R. Evid. 201(b)). A Google map search shows the Property is within Michigan, which is within the United States.[10]

Consequently, I suggest that Plaintiff is entitled to enforce the tax liens against Defendant's property, including by sale of the Property pursuant to a future court order.

## III.  Conclusion

For the reasons above, I **recommend** that the Court **DENY Defendant Chaffee's motion** (ECF No. 26) and **GRANT Plaintiff's motion**, with the judgment for tax penalties equal to Plaintiff's alternative request for 19 penalties, (ECF No. 24).

---

[10]   The unwieldly URL for the search is: https://www.google.com/maps/place/1794+McGregor+Rd,+Vanderbilt,+MI+49795/@37.9092393,-100.3246589,5.26z/data=!4m5!3m4!1s0x4d3542b8780852df:0x22fbf283ac834b8a!8m2!3d45.1583328!4d-84.7096002 (last accessed Oct. 24, 2019).

IV.    <u>Review</u>

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Dakroub v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

41

Date:  November 8, 2019                          /S PATRICIA T. MORRIS
                                                 Patricia T. Morris
                                                 United States Magistrate Judge


## **CERTIFICATION**

I hereby certify that the foregoing document was electronically filed this date through the Court's CM/ECF system which delivers a copy to all counsel of record and that I have mailed by U.S. Postal Service to following non-ECF participant: Randy J. Chaffee, 1794 McGregor Road, Vanderbilt, MI 49795.

Date: November 8, 2019                          By s/ S.Krause acting the absence of
                                                Case Manager, Kristen Castaneda